UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-00198-TBR

BURKHEAD & SCOTT, INC.                                                                                    PLAINTIFF

v.

CITY OF HOPKINSVILLE                                                                                      DEFENDANTS
HOPKINSVILLE SOLID WASTE AUTHORITY

**OPINION AND ORDER**

Senior Judge Thomas B. Russell referred this matter to Magistrate Judge Lanny King for ruling on discovery motions. (DN 21). Before the court is a motion for a protective order to prevent the compelled disclosure of emails between the defendants: the City of Hopkinsville (the "City") and the Hopkinsville Solid Waste Authority ("HSWA"). (DN 24). While the defendants contend these emails are protected, the plaintiff, Burkhead & Scott, Inc. ("BSI"), contends any attorney-client privilege or work product protection was waived or otherwise inapplicable. The matter is now fully briefed and ripe for adjudication. The court will reserve ruling on the motion for a protective order (DN 24) pending the submission of a revised privilege log.

**I.     Background**

The plaintiff has brought both state law and federal constitutional claims against the defendants. The plaintiff argues the City and HSWA waived attorney-client privilege and/or work product protection over any communications between them because the two are separate entities. While an exception to waiver for communications between co-defendants exists, BSI argues these defendants do not have identical legal interests, and this exception should not apply. Further, it questions whether the content of the communication qualifies for attorney-client privilege or work-product protection.

1

The City and HSWA contend identical legal interests are unnecessary, and that the communications need not be entirely prepared to further legal advice to receive the privilege's protections. In any event, they contend the doctrine is unnecessary as the City and HSWA are a single entity for purposes of privilege.

**II.     Discussion**

None of the communications at issue are protected from discovery without a valid claim of privilege. In a government setting, not all communications with an attorney may fall within privilege's protections. Once privilege's availability has been established, its applicability to the communications at issue may be scrutinized. This court finds privilege available through the common interest doctrine, but likely waived or inapplicable in many instances. It is unnecessary to address at this time whether the City and HSWA are a single entity. Emails without an attorney recipient or sender are not privileged, nor are emails to or from non-parties. The doctrine does not excuse disclosure of the communications to third parties or extend protection to otherwise unprotected government communications. The work-product doctrine may extend protection to documents prepared by non-attorneys but is similarly waivable. Given these holdings, the privilege log submitted by the Defendants gives inadequate detail to allow evaluation of their claims of privilege and work product protection.

**A.     Attorney-Client Privilege**

The attorney-client privilege safeguards from disclosure "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." In re Grand Jury Subpoena, 886 F.2d 135, 137 (6th Cir. 1989) (citation omitted). Both federal and state law recognize the privilege. Fed. R. Evid. 501 dictates federal common law govern privilege in federal court. However, "in a civil case, state law governs privilege regarding

a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. State privilege law is not applicable here. Where a federal question is presented to a court with pendant state law claims, federal common law governs privilege disputes. Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992).

The scope of the attorney-client privilege is construed narrowly. In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289 (6th Cir. 2002). The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." Id. at 294. In fostering clients' confidence in their lawyers, the privilege's purposes include facilitating full disclosure. "A fully informed lawyer can more effectively serve his client and promote the administration of justice." Reed v. Baxter, 134 F.3d 351, 356 (6th Cir. 1998). The Sixth Circuit has recognized attorney-client privilege for municipal governments and corporations. Ross v. City of Memphis, 423 F.3d 596 (6th Cir. 2005). A narrow construction is especially important in situations where governments claim privilege.

> Courts and commentators have cautioned against broadly applying the privilege to governmental entities. The recognition of a governmental attorney-client privilege imposes the same costs as are imposed in the application of the corporate privilege, but with an added disadvantage… [because it] stands squarely in conflict with the strong public interest in open and honest government.

Id. (citing In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 916 (8th Cir. 1997)).

The Sixth Circuit articulates the elements of privilege as:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

Reed at 355–56 (citing Fausek v. White, 965 F.2d 126, 129 (6th Cir.1992)). "The burden of establishing the existence of the privilege rests with the person asserting it." In re Columbia/HCA Healthcare Corp. Billing Practices Litig. at 294.

The first three elements can raise subtle questions when governments assert privilege. The District of Columbia Circuit has explained, "when an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply." Gen. Elec. Co. v. Johnson, No. CIV.A.00-2855(JDB), 2006 WL 2616187 at *16 (D.D.C. Sept. 12, 2006).

Nonetheless, district courts in this circuit have found privilege where government attorneys act not just in a broad policy capacity but in a similar capacity to that of a private attorney advising a client about its interests. Cooey v. Strickland, 269 F.R.D. 643 (S.D. Ohio 2010). The Cooey Court, in a review of relevant case law, distinguished between attorneys functioning as policymakers and attorneys rendering legal advice. Id. at 650-1 (citing, inter alia, Pritchard v. County of Erie, 473 F.3d 413 (2d Cir. 2007)). The latter would be protected communication. The former would not. In Cooey, "[t]he items in question [were] emails and communication, the predominant purpose of which was to schedule meetings or telephone calls and to provide or solicit legal advice." Id. at 652. That court found attorney-client privilege applied. The court contrasted that situation to that in General Electric and National Council of La Raza v. Department of Justice, 411 F.3d 350 (2d Cir. 2005). In General Electric, the court found privilege did not apply to communications regarding the government attorneys' responsibilities outside rendering the agency (the Environmental Protection Agency) legal advice.[1] In La Raza, the court found privilege did not apply where otherwise protected documents were "adopted as, or incorporated by reference into, an agency's policy." La Raza at 360. In those situations, the role of privilege in encouraging attorney-client communications "evaporates," because "frank communication will not be inhibited." Id.

---

[1] The court found "the privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties, or other functions that create law." General Electric at *16.

4

For privilege to apply, in a government context or otherwise, the communication must be kept confidential. "The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999). However, privileged communications may be shared with third parties without waiving the privilege under certain circumstances. Both joint representation and the common interest doctrine extend the privilege to otherwise unprotected communications. "Unfortunately, joint representation is frequently confused with the 'common interest' doctrine, also known as the 'joint defense' doctrine." Merck Eprova AG v. ProThera, Inc., 670 F. Supp. 2d 201, 211 n4 (S.D.N.Y. 2009).

The common interest doctrine is applicable where two parties with separate counsel share information concerning a common legal cause, sometimes articulated as the "joint defense privilege," "common interest privilege," or "community of interest privilege." United States v. Suarez, No. 5:13 CR 420, 2014 WL 1898582 at *1 (N.D. Ohio May 8, 2014). Jurisdictions differ as to the community of interest required. In the Sixth Circuit, "legal, factual, or strategic" common interests can serve to make the doctrine applicable. Reed at 357. The doctrine has several limitations.

> First, the doctrine applies only when all attorneys and clients have agreed to take a joint approach in the matter at issue… [s]econd, the doctrine applies only to protect communications regarding the common interest and intended to further that interest. Extraneous communications that do not further the common goal are not privileged,… [t]hird, communications made between parties themselves, when no attorneys are present, may not be privileged, as some courts find that these communications are not likely tied to the parties' common legal interest.

Cooey v. Strickland, 269 F.R.D. 643, 652-53 (S.D. Ohio 2010) (citing 2–501 Federal Rules of Evidence Manual 501.02(5)(e)(ii)). When the communication is made with non-parties to the

litigation, many courts have held an "identical" legal interest is necessary for the doctrine to apply.[2]

BSI argues the defendants are separate entities and have insufficient overlapping legal interests for the application of the common interest doctrine. While arguing they are a single entity for purposes of privilege, the defendants counter their interests are sufficiently aligned for the doctrine's protection. This court finds a sufficient common interest for privilege to apply. In construing the doctrine narrowly in the government context, as cautioned, the doctrine is not applicable to all the communications at issue.

### 1.     Common Interest Doctrine

The defendants maintain a joint representation privilege applies. Joint representation refers to situations where two parties share a common attorney for representation in a particular matter. Joint representation, for the purposes of this opinion, refers only to multiple clients represented by a single attorney or firm in a particular matter. Because both the City and HSWA are independently represented, it is not necessary to analyze a joint representation privilege.

However, the defendants support their privilege assertion with common interest doctrine case law. "The party asserting the [common interest] privilege must show that: '(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived.'" Travelers Cas. & Sur. Co. v. Excess Ins. Co., 197 F.R.D. 601, 606 (S.D. Ohio 2000) (citing In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir.1986)). In construing the doctrine narrowly, this court follows other district courts in this circuit in concluding that an

---

[2] This standard was first articulated in Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1172 (D.S.C. 1974). It has subsequently been widely, but not universally, followed. See generally, Paul Rice, 1 Attorney-Client Privilege in the U.S. § 4:36 nn.17 & 18 (2014) (available in Westlaw).

attorney must be involved in the communications for the doctrine to apply.[3] As the First Circuit explained, "[w]hen a person provides information to another without first consulting his own attorney, it is difficult to see how the information was given as part of a joint defense, even when the recipient may be viewed as a party with similar interests." United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 29 (1st Cir. 1989).

The plaintiff argues the defendants must have identical legal interests for the common interest doctrine to apply. Their interests are not identical because the two defendants might be adverse in a damages assessment should the plaintiff's prevail on the state law claim. However, courts that have held identical interests are necessary have done so when one party was a non-litigant. See generally, Paul Rice, supra; see also Duplan, supra; In re Rivastigmine Patent Litigation, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005 (S.D. N.Y. Sept. 22, 2005); North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511 (M.D. N.C. 1986); Stavanger Prince K/S v. M/V JOSEPH PATRICK ECKSTEIN, Civ. A. Nos. 92–0983, Civ. A. 92–0990, 1993 WL 35174 (E.D. La. Feb. 10, 1993); Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd., No. 95 C 0673, 1996 WL 514993 (N.D. Ill. Sept. 6, 1996). District courts in the Sixth Circuit have found common interests even absent identical interests. Broessel v. Triad Guar. Ins. Corp., 238 F.R.D. 215 (W.D. Ky. 2006) (J. Goebel); Travelers Cas. & Sur. Co. v. Excess Ins. Co., 197 F.R.D. 601 (S.D. Ohio 2000); United States v. Lucas, No.

---

[3] See United States v. Lucas, No. 1:09 CR 222, 2009 WL 5205374 (N.D. Ohio Dec. 23, 2009) (citing Travelers Cas. & Sur. Co. v. Excess Ins., infra) ; United States v. Suarez, No. 5:13 CR 420, 2014 WL 1898582, at *7 (N.D. Ohio May 8, 2014) (finding communications between criminal co-defendants outside presence of counsel outside common interest doctrine); In re Dayco Corp. Derivative Sec. Litig., 99 F.R.D. 616, 622 (S.D. Ohio 1983) ("[The Joint Defense] privilege has been limited to 'disclosure of privileged information by an attorney to actual or potential codefendants, or to their counsel, in the course of a joint defense.'") (citation omitted)); But see John B. v. Goetz, 879 F. Supp. 2d 787, 898 (M.D. Tenn. 2010) ("The joint-defense privilege shields some communications between co-defendants made outside of their counsel's presence, but only if the communications were pursuant to specific instructions of their counsel."); Carfagno v. Jackson Nat'l Life Ins. Co., No. 5:99CV118, 2001 WL 34059032, at *7 (W.D. Mich. Feb. 13, 2001) (applying Texas law).

1:09 CR 222, 2009 WL 5205374 (N.D. Ohio Dec. 23, 2009) (finding common interest in a criminal context). Following this precedent, this court finds identical interests unnecessary in this context.

The City and HSWA established a joint plan to defend their common interests. The current claim was filed in December 2012. (Complaint, DN 1). The existence of disputed emails prior to this date evidences a combined effort to assert the validity of HSWA and its actions prior to any forced cooperation. As one example, an unredacted email dated before the litigation was filed shows an HSWA employee telling the mayor of Hopkinsville he will contact HSWA's lawyer regarding the potential dispute with BSI. (Exhibit 2, DN 24-3 at 11). This evidences the establishment of a joint defense.

In addition to subjectively having established a joint defense, the defendants also possess a community of interest sufficient to apply the common interest doctrine. The city and HSWA share a common goal not only in this litigation and the continued validity of the solid waste ordinances in dispute, but also in providing solid waste services to the city of Hopkinsville. (Kemp Affidavit, DN 24-4 at ¶ 4). The plaintiff seemingly concedes the defendants' similarity of interests in arguing only that the defendants' interests might later diverge. (Plaintiff's Response, DN 25 at 3). It is true that any communications between the defendants discussing their adverse interests would not be privileged. See Cooey at 652. However, the defendants claim there were no such discussions, (Defendant's Reply, DN 24 at 3), and the plaintiffs have pointed to no evidence to indicate otherwise. As such, this opinion finds the communications at issue possess a sufficient common interest.

Following Sixth Circuit guidance in construing government assertions of privilege narrowly, this opinion narrowly applies the common interest doctrine. As such, only those

communications between the parties and counsel are privileged. A protective order grounded in privilege is unsubstantiated for emails without counsel included. However, a narrow construction of this waiver doctrine does not narrow other elements of privilege. As the defendants argue, it is not necessary that counsel be the primary senders or recipients of the emails.[4] A conversation between co-clients in front of their attorney would be privileged so long as "legal advice… is sought." Reed at 355. This opinion sees no reason why the digital equivalent of that conversation should not be. Nor is it necessary that the communications be made exclusively in furtherance of obtaining legal counsel to satisfy the Sixth Circuit's elements of privilege. The defendants claim so long as communications are made "at least in part" to enable legal advice, they are privileged. (Motion for Protective Order, DN 24-1 at 7 (citing In re OM Securities Litigation, 226 F.R.D. 579 (N.D. Ohio 2005). The Cooey Court used a "predominant purpose" test. Cooey at 650. Without ruling on the applicable test, it is clear that the communication need not be exclusively made to obtain legal counsel to receive protection. This construction, in this court's view, confines the common interest doctrine to the appropriate element of privilege without unnecessarily limiting other elements.

### 2. Waiver of Privilege

While the common interest doctrine excepts from waiver communications between the parties, it does not except communications in which additional parties were included. In conformance with the strict construction this opinion gives the common interest doctrine in the government context, these additional parties are viewed narrowly. While the city as an organization with common interests would include Mayor Kemp and City Council members, it might not include unrelated departments or non-city governmental entities. Likewise, the HSWA

---

[4] As support, the defendants cite another district court in the Sixth Circuit following federal law and a Fifth Circuit opinion applying Texas law. (Motion for Protective Order, DN 24-1 at 7 (citing In re OM Securities Litigation, 226 F.R.D. 579 (N.D. Ohio 2005); In re Avantel, S.A., 343 F.3d 311 (5th Cir. 2003)).

is viewed narrowly. The defendants' privilege log lists the most prominent individuals who either received or sent the disputed emails. Some of the individuals listed may be outside the scope of privilege. Other individuals, who are not listed in the privilege log but are included in emails, would also facially waive privilege.

The privilege log list ("Parties and Relationship" list) includes Chris Bowling and Bob Pickerill. As explanation, Mr. Bowling is described as a "Financial Advisor, Civic Finance Advisors, LLC"; Mr. Pickerill is described as a "HSWA Engineer (by contract)." (Exhibit 2, Privilege Log, DN 24-2 at 2). A note, dated in 2001 but contained in an unredacted 2012 email, describes Mr. Pickerill as being affiliated with Howard K. Bell Engineering. (Exhibit 2, DN 24-3 at 87). The defendants' log contains no other explanation for their inclusion; absent such explanation, Mr. Pickerill's and Mr. Bowling's inclusion waives privilege as to those emails.

The "Parties and Relationship" list does not explain other recipients' or senders' inclusion. Their inclusion is not explained elsewhere. Mitch Robinson and Vonda Gates were included in several emails. (See, e.g., Exhibit 2, DN 24-3 at 93). Their email addresses contain a "hopkinsvilleindustry.com" domain. This website appears to be a Hopkinsville area economic development agency. Chris Sutton, Jason Vincent, and Ashley Johnson are recipients/senders affiliated with the "Pennyrile ADD" (presumably, the Pennyrile Area Development District). (See, e.g., Exhibit 2, DN 24-3 at 48). The defendants make no attempt to justify or explain the inclusion of either the hopkinsvilleindustry.com email addresses or the "Pennyrile ADD" email addresses. Without further explanation, especially given the narrow organizational view this court takes of the Hopkinsville city government, this court must assume privilege over these emails has been waived.

Likewise, at least one email over which protection has been asserted has sales@djsflooring.com as the primary recipient. (Exhibit 2, DN 24-3 at 32). DJ's Flooring, along with the current plaintiff, is explained in a privilege log description as opposing City/HSWA actions. Without further explanations, this court must assume DJ's flooring's inclusion has waived privilege.

While the motion before the court does not necessitate a definitive privilege waiver ruling, the defendants have not met their burden of establishing privilege to warrant a protective order covering djsflooring.com, hopkinsvilleindustry.com, or "Pennyrile ADD" emails.

Accordingly, the court will reserve ruling on protective order on the basis of privilege covering any emails sent by or to anyone other than HSWA, the City (narrowly construed), or their counsel. This court finds those listed in the privilege log, with the exception of Mr. Pickerill and Mr. Bowling, to be sufficiently affiliated with their respective organizations. However, the inclusion of Mr. Pickerill, Mr. Bowling, or other unexplained individuals[5] will waive protection unless an updated privilege log substantiates why they should not be considered third parties.

**B.   Work Product Protection**

Work-product protection may also be waived. "Both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties." New Phoenix Sunrise Corp. v. C.I.R., 408 F. App'x 908, 918 (6th Cir. 2010). Nonetheless, the work product doctrine may provide some protection where privilege would not. "The current doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir.

---

[5] At least one paralegal, Carol Butterfield, sent or received messages. (Exhibit 2, DN 24-3 at 24). A paralegal's inclusion would not waive privilege. See Renda Marine, Inc. v. United States, 62 Fed. Cl. 371 (2004).

2006). "A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" Id.

Work product's protections are broader in this instance because they may encompass documents "prepared… by or for a party," though not necessarily an attorney. Rule 26(b)(3) was amended in 1970 to include any representative of a party, not just an attorney. Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine,* American Bar Association Section of Litigation at 545 (4th ed.2001). As all email recipients or senders with an affiliation to one of the organizational defendants at issue are representatives, any documents they prepared are protected so long as they were prepared in anticipation of litigation and the protection was not waived.

The defendants claim the mayor of Hopkinsville learned of the potential litigation on March, 26, 2012 and all emails sent thereafter were in preparation for litigation.[6] This assertion covers a time span of over a year. The Sixth Circuit has stated "that a party may satisfy its burden of showing anticipation of litigation 'in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories,' and that the showing 'can be opposed or controverted in the same manner.'" Roxworthy at 597 (citation omitted).

The defendants, while arguing in a privilege context, assert the content of the emails concerned "passage, implementation, and issues surrounding the new ordinance… [and] amendments…." (Plaintiff's Response, DN 25 at 5). Aside from this assertion, they offer no other evidence to dispute the defendant's claims. Given the conclusory and non-specific nature of the affidavit used to support the defendant's work product claim, however, Mayor Kemp's

---

[6] Mayor Kemps's Affidavit claims most emails after March 26, 2012 were in anticipation of this litigation, while he specified several that were in anticipation of litigation in another matter. (Kemp Affidavit, DN 24-4 at 2-3).

affidavit carries only limited weight.[7] To the extent any emails are not protected by privilege (where, for instance, no counsel is included), work-product may provide protection providing the protection has not been waived and is substantiated by context or any updated privilege log to be in anticipation of litigation.

        C.     **Assertion of Work Product and Privilege**

"The burden of establishing the existence of the privilege rests with the person asserting it." In re Columbia/HCA Healthcare Corp. Billing Practices Litig. at 294. Likewise, "[a] party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared "in anticipation of litigation…. It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege.... Thus, a document will not be protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation. United States v. Roxworthy, 457 F.3d 590, 593-94 (6th Cir. 2006).

The bare assertion of work product protection or privilege does not shield documents from discovery. The defendants have submitted a privilege log to the court and opposing counsel, presumably in an effort to comply with Fed. R. Civ. P. 26(b)(5). (DN 24-2). Compliance is commonly accomplished with such a log. As such, the log should provide a "fairly detailed and specific showing" to substantiate withholding discovery on privilege grounds. In re Universal Service Fund Telephone Billing Practices Litigation, 232 F.R.D. 669, 671 (D. Kan.

---

[7] See id. ("Where an 'undisputed affidavit ... is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial," then the party claiming work product protection has met its burden. However, application of the privilege will be rejected where the 'only basis' for the claim is an affidavit containing 'conclusory statement[s].'"(citations omitted)).

2005). This showing then allows the opposing party (and the court in any *in camera* review) to "assess the claim [of privilege]" in compliance with Rule 26(b)(5).

The submitted privilege log is inadequate. Given the complexities of government assertions of privilege, it provides insufficient information. For example, the privilege log describes the email chain labeled "Set 10" as a discussion about "solid waste reporting requirements… between City employees, HSWA and counsel." (DN 24-2 at 4). Without more neither the court nor opposing counsel can assess whether this falls within a valid claim of attorney-client privilege by a government. The next chain (Set 11), redacted entirely, is described as a discussion about "revising the ordinance." Id. Without further information, this would fall outside the protections of attorney client privilege for a government.

### III. Conclusions and Order

This opinion finds the common interest doctrine applicable to communications between the HSWA, the city, and their counsel. However, this exception to waiver is inapplicable to communications in which counsel was not included. Any emails after March 26, 2012 may be protected by the work product doctrine. Whether protected on the basis of work product or privilege, disclosure to non-parties to the litigation waives protection. This court finds protection unsubstantiated over any emails sent to or from parties not directly affiliated with either defendant. Further, the privilege log provides insufficient description to assess the defendant's privilege and work product protection claims.

THEREFORE, IT IS ORDERED:

1. The Court reserves ruling on the motion for a protective order (DN 24) pending submission of a revised privilege log to opposing counsel and the court,

2. Defendants shall file a notice of filing, with a revised privilege log as an attachment, with the court within 14 days of the entry of this order, and

3. The dispositive motion and discovery deadlines of the Agreed Amended Scheduling Order (DN 27) are STAYED pending resolution of this matter.

cc:     counsel